UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Franklin Daniel Rowell, | ) | Civil Action No. 5:18-cv-1014-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Andrew M. Saul, Commissioner of | ) | ORDER |
| Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil

Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition

for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial

review of a final decision the Commissioner of Social Security ("Commissioner"), denying his

claim for Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act").

Having carefully considered the parties' submissions and the applicable law, the court affirms the

Commissioner's decision for the reasons discussed herein.

I.    Relevant Background

   A.    Procedural History

On December 31, 2012,[2] Plaintiff protectively filed for SSI under Title XVI of the Act,

alleging a disability onset date of March 15, 2012. Tr. 139-44. The record contains a Disability

Determination and Transmittal with an SSI filing date of September 19, 2012 for a primary

diagnosis of "Other Fractures of Bones" and a secondary diagnosis of "Aortic Aneurysm." Tr. 38.

---

[1] Andrew M. Saul became Commissioner of Social Security in June 2019. Commissioner Saul is
hereby substituted for the former Acting Commissioner, Nancy A. Berryhill, as the named
defendant in this action. *See* 42 U.S.C. § 405(g), Fed. R. Civ. P. 25(d).
[2] The Application Summary is dated January 9, 2013. Tr. 139. However, the decision of the
Administrative Law Judge ("ALJ") indicates Plaintiff's protected filing date as December 31, 2012,
Tr. 77, and Plaintiff's Brief indicates Plaintiff applied for SSI on December 31, 2012, Pl.'s Br. 1,
ECF No. 9.

This Determination reflects an initial denial dated June 28, 2013. *Id.* This claim was denied on reconsideration on November 15, 2013. Tr. 54. The record contains another Application for SSI with a filing date of May 7, 2014. Tr. 145-67. A Disability Determination and Transmittal with the May 2014 filing date indicates a primary diagnosis of "Other Diseases of Circulatory System" and a secondary diagnosis of "Organic Mental Disorders (Chronic Brain Syndrome)." Tr. 71. The Determination reflects an initial denial of this claim on December 19, 2014, Tr. 71, and a denial upon reconsideration on March 27, 2015, Tr. 73.

Plaintiff requested a hearing before an ALJ, Tr. 119, and the ALJ conducted a hearing on February 7, 2017, taking testimony from Plaintiff and Vocational Expert ("VE") William Stewart, Tr. 705-48. Representing Plaintiff at that hearing was his attorney, Brett Owens. Tr. 705. The ALJ denied Plaintiff's claim in a decision dated March 28, 2017. Tr. 74-93. Plaintiff requested review of this decision from the Appeals Council. Tr. 131. On December 29, 2017, the Appeals Council granted Plaintiff's request for review of the ALJ's decision in a Notice of Appeals Council Action. Tr. 133-38. The Appeals Council noted that, in addition to his application for SSI, Plaintiff had filed a Title II claim for Disability Insurance Benefits ("DIB") on September 19, 2012.[3] Tr. 134. The Appeals Council addressed Plaintiff's DIB claim in addition to his SSI claim, considered the medical evidence of record and the hearing recording, and indicated its plan to adopt the ALJ's SSI findings for Plaintiff's DIB claim, which had determined Plaintiff was not under a disability from his alleged onset date of March 15, 2012 through the ALJ's decision date of March 28, 2017. Tr. 137. The Appeals Council gave Plaintiff 30 days to submit additional evidence or ask for appearance before the Appeals Council. Tr. 137. The Appeals Council did not receive comments or

---

[3] The undersigned notes there is no application for DIB in the record. However, as noted above, the record contains a Disability Determination and Transmittal with a September 19, 2012 filing date for an SSI claim. Tr. 54.

additional evidence subsequent to its notice of proposed action and on March 5, 2018 entered its unfavorable final decision finding that Plaintiff was not entitled to DIB or SSI. Tr. 8-16. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed April 13, 2018. ECF No. 1.

B.      Plaintiff's Background

Plaintiff was born in December 1975 and was 37 years old when he filed his application for SSI on December 31, 2012, and 36 years old as of the alleged onset date of March 15, 2012. Tr. 200.

Plaintiff's medical records reflect that he was involved in a motorcycle collision on March 26, 2012, when he was intoxicated and drove his motorcycle through a fence. Tr. 593. Plaintiff was admitted to the hospital with a traumatic aortic arch tear, C1 left lateral mass fracture, left medial malleolus fracture, and left first through fifth metatarsal fractures. *Id.* Plaintiff underwent several surgeries and was discharged from the hospital on April 9, 2012. Tr. 593-95.

In his form Disability Report-Adult dated June 26, 2014, Plaintiff indicated he completed the eighth grade,[4] did not attend special education classes, and did not complete any specialized job training, trade, or vocational school. Tr. 215. He listed his past relevant work ("PRW") as welding, landscape laborer, and drop ceilings construction. *Id.* Plaintiff indicated he stopped working on March 15, 2012 because of his medical conditions that he described as seizures, heart condition, acid reflux, and vision problems. Tr. 214. Plaintiff indicated he was 5'4" tall and weighed 168 pounds. *Id.* In a Disability Report-Appeal dated April 16, 2015, Plaintiff indicated he was being treated for physical and mental conditions. Tr. 254. Plaintiff noted that he was constantly in pain and his "left foot is always hurting making it difficult to walk for long periods of time." Tr. 259.

_____

[4] At the administrative hearing Plaintiff testified that he completed the seventh grade and dropped

C.      Administrative Proceedings

On February 7, 2017, Plaintiff appeared with counsel at an administrative hearing in Columbia, South Carolina and testified regarding his application for SSI. Tr. 705. VE William Stewart also appeared and testified at the hearing. *Id.*

1.      Plaintiff's Testimony

In response to questions from the ALJ Plaintiff testified that he lived in Hamer, South Carolina with his mother. Tr 711. Plaintiff stated that he was 5'4" tall and weighed about 138 pounds, which was his normal weight. Tr. 711-12. Plaintiff testified that he was not working, and he last worked in 2011 for Florence Steel as a welder. Tr. 712. Plaintiff stated the last job he worked on was building a school in Texas and when he returned home he almost lost his life in a motorcycle accident. *Id.* Plaintiff testified that he "he stayed on a drunk for about a year, and [his] last drink was February 20, 2014." *Id.*

Plaintiff testified that a lot of his past work involved "building motorcycles, low-rider car carriers and asphalt trailers." Tr. 714. Plaintiff stated: "Basically all I was doing my whole life was setting mobile homes and welding." Tr. 715. Plaintiff also testified that he worked for Franko Manufacturing wrapping boxes of tiles. *Id.* Plaintiff stated he lifted the boxes which weighed from 40 up to 90 pounds. Tr. 716.

The ALJ asked Plaintiff what was the biggest problem that kept him from working and Plaintiff responded that he "can't sit down because of [his] back." Tr. 718. Plaintiff also testified that doctors had to "rebreak" his foot and put a pin it and because he is unable to fight off infections due to his psoriasis, his foot got infected. Doctors removed the pin and now his "foot hurts like crazy all the time." *Id.* Plaintiff testified that a week after his foot surgery he had a hernia operation

_____

out of school before completing the eighth grade. Tr. 726.

and now he needs another one. *Id.* Plaintiff testified that he was cut with a knife down his left side and has problems with his left arm and "with [his] whole body." Tr. 719. Plaintiff described having pain in the middle of his chest that started four months prior. *Id.* Plaintiff said he found out that the pain was related to "something they put [him] back together with" after his motorcycle accident. Tr. 719-20. Plaintiff also stated his knees hurt but he does not know why. Tr. 720. Plaintiff testified he has been unable to see a doctor because he has no insurance. *Id.* When asked to describe the pain in his foot Plaintiff testified that it "actually hurts all the time but it mostly hurts when I try to walk on it." Tr. 721. Plaintiff indicated that he was wearing a specially-made shoe that helped "a little bit." *Id.* Plaintiff stated that the surgery made it worse. *Id.* The ALJ noted that Plaintiff had a cane and Plaintiff stated he needed it to keep the pressure off his foot and he had to start using it after his surgery. *Id.* Plaintiff stated that doctors had not gotten to treating his back yet. *Id.* Plaintiff stated that doctors repaired his hernia on the left side, then they repaired the right side, but they now need "to go back in and redo the left one." Tr. 722-23.

The ALJ asked about positive drug tests for amphetamines, oxycodone, and other opiates. Tr. 723. Plaintiff testified that his seizure medication shows up as opiates and that doctors prescribed all those drugs after his surgeries. *Id.* Plaintiff testified that his seizures are under control after having his medication increased. Tr. 724-25. Plaintiff testified that he can sit longer than he can stand, and he can stand for a few minutes in one spot before needing to sit down. Tr. 725. Plaintiff testified that walking is better, and he tries to walk as much as he can because it helps with his pain. *Id.* Plaintiff stated that he also tries to exercise by bending his knees. Tr. 726.

Plaintiff testified that he finished the seventh grade but quit school in the eighth grade because he was "[y]oung, partying, drinking, [and] didn't care." Tr. 726. Plaintiff stated that he was not in regular classes and people would pick on him and his brother because of their old clothes. Tr.

727. Plaintiff testified that his driver's license was taken away due to DUI's but in 2014 he was able to get it back but has to use a breathalyzer before he can start the car. Tr. 727-28. Plaintiff testified that when he first took the driver's test he took it on the computer. Tr. 728. Plaintiff stated that he is "a real slow reader" but he can write well enough to make a grocery list. Tr. 729. Plaintiff testified that during the day he helps his mother with yard work and watches a little television. Tr. 730. Plaintiff stated there was not much to do, but he helps his brother who has a youth ministry with fundraising activities. Tr. 731-32.

The ALJ asked Plaintiff why he would be unable to do a job sitting at a table inspecting pens. Tr. 732. Plaintiff responded that he did not know if he ever had a job to inspect pens. Tr. 733.

Plaintiff's counsel asked Plaintiff to put that example aside, and instead he asked Plaintiff to explain why he could not do a desk job answering phones. Tr. 733. Plaintiff stated that his back would prevent him from working and his "head was hit." *Id.* With regard to his schooling Plaintiff testified that he did not go to school often because he could not read and write well, and people were picking on him and his brothers all the time. Tr. 734. Plaintiff stated he would have a hard time understanding newspaper articles and he was trying to read the Bible but was having a hard time understanding it. Tr. 735. Plaintiff stated that although he could write a grocery list he cannot spell. Plaintiff stated that his mother does the grocery shopping. *Id.* Plaintiff testified that he was able to drive and had driven himself to the hearing although someone accompanied him. Tr. 736. Plaintiff testified that he helps his mother around the house. Tr. 737. He stated he will "get the trash up" and "sweep the kitchen." *Id.* Plaintiff stated that he will sweep half the kitchen, then sit and rest for a minute or two, and sweep the other half. *Id.* Plaintiff confirmed that his physical and mental conditions stem from his motorcycle accident. *Id.* Plaintiff confirmed that his positive drug screens where based on medications he was prescribed as a result of his surgery and he was not taking any

illicit drugs. Tr. 737-38. When asked about his ability to concentrate and remember things Plaintiff testified that he has to write it down. Tr. 739.

2. VE's Testimony

The VE identified Plaintiff's PRW as a welder, Dictionary of Occupational Titles ("DOT") number 819.384-010, medium exertional level, SVP:6, skilled. Tr. 741. The VE noted that some of Plaintiff's welder jobs involved lifting 100 pounds or more so they would have overlapped into the heavy exertional category. *Id.* The VE further identified Plaintiff's PRW as motorcycle sub-assembler, DOT number 806.684-094, heavy, SVP:5, beginning level of semi-skilled work; packager-hand, DOT number 920.587-018, medium, SVP:2, unskilled; and mobile home lot utility worker, DOT number 899.484-010, heavy, SVP:6, skilled. Tr. 741-42. After some discussion, the VE corrected his identification of Plaintiff's past job from motorcycle assembler to trailer assembler II, DOT number 806.684-082, medium, SVP:4, semi-skilled. 742-43. The ALJ posed the following hypothetical:

> [A]ssume an individual who is 41 years old with a seventh grade education and relevant past work as same as the Claimant, who is limited to lifting 20 pounds occasionally, ten pounds frequently. The individual can sit, stand and walk six of eight hours each. The individual can frequently climb ramps or stairs, occasionally climb ladders, ropes or scaffolds, frequently balance, stoop, kneel, crouch and crawl. The individual should never be exposed to unprotected heights and moving machinery. And would be limited to simple routine and repetitive tasks not at a production rate pace. The individual would be limited to simple work decisions in environments where there were only occasional routine changes in the work setting and duties.

Tr. 743. The ALJ asked if that individual could perform any of Plaintiff's past work and the VE testified that "all of the past jobs would be ruled out." Tr. 744. The VE testified that there would be light, unskilled jobs that would match the description and identified the following representative examples: assembler, DOT number 706.684-022, light, SVP:2, unskilled, nationally 100,000 jobs which is a reduced number because of no production work; inspector and hand packager, DOT

number 559.687-074, light, SVP:2, with reduced number of 90,000 jobs; and cleaner, DOT number 323.687-014, light, SVP:2, nationally 150,000 jobs. Tr. 744. The ALJ asked if the available work would change if he added the requirement that "the person must have reminders of work tasks an additional two times a day[.]" *Id.* The VE responded that "there probably would be some reduction in the numbers, but not the jobs that [he] gave." Tr. 745. The VE opined the reduction would be "20 percent, 25 percent at the most" for the kinds of jobs he identified. *Id.* The ALJ asked if there would be jobs available if the individual described in either of the prior two hypotheticals "would be unable to sustain concentration for two hour blocks of time or would be off task for 20 percent of the workday in additional [sic] to regularly scheduled breaks" and the VE responded there would not be a job that would match that description. *Id.* The VE testified that his testimony was consistent with the DOT except the DOT does not address a worker being off task 20 percent of the workday. The VE stated his testimony was based on his "many years of clinical experience and to a degree [his] study and [his] training over the years." *Id.* The VE also noted that the DOT does not include information related to task reminders, and his testimony was based on the same clinical experience, study, and training. Tr. 745-46.

Plaintiff's counsel asked, with regard to the assembler, inspection, hand packer, and cleaner jobs whether the individual would still be required to keep up a certain pace and be able to meet certain requirements throughout the day to fulfill job expectations. Tr. 746. The VE responded that "would be absolutely correct." *Id.* The VE agreed with the premise that an assembler would still need to sit and be responsible for a particular assembly portion throughout the day and maintain concentration throughout the majority of the day. *Id.* The VE testified that "[e]ven like in cleaning, you've still got to maintain an appropriate flow of work during the day. And that ties in with not being off task, as well." *Id.*

II.     Discussion

A.      The ALJ's Findings

In her March 28, 2017 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.     The claimant has not engaged in substantial gainful activity since December 31, 2012, the application date (20 CFR 416.971 *et seq*.).
>
> 2.     The claimant has the following severe impairments: left foot fractures post motor vehicle accident, aortic aneurysm repair, chronic 5th toe metatarsal dislocation, substance addiction disorder in remission by report, chronic pain disorder, major depressive disorder, anxiety disorder and borderline intellectual functioning (20 CFR 416.920(c)).
>
> 3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 416.967(b) except the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently. He could sit, stand and/or walk for 6 hours each in an 8-hour workday. The claimant could frequently balance, stoop, kneel, crouch, crawl or climb stairs/ramps and could occasionally climb ladders, ropes or scaffolds. He should avoid all exposure to hazards including unprotected heights and dangerous moving machinery. The claimant is limited to performing simple, routine, repetitive tasks, but should not work at production rate pace. He is limited to simple work decisions with only occasional, routine changes in the work settings and duties. Additionally, he must have additional task reminders twice daily.
>
> 5.     The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> 6.     The claimant was born on December 26, 1975 and was 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 31, 2012, the date the application was filed (20 CFR. 416.920(g)).

Tr. 79-80, 82, 91-93.

B. Legal Framework

1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment;

(3) whether that impairment meets or equals an impairment included in the Listings;[5] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence

---

[5] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish the inability to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed

"even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.    Analysis

Plaintiff alleges that the ALJ erred in (1) failing to consider all of Plaintiff's impairments, both severe and non-severe, and (2) failing to consider all of the medical evidence in determining Plaintiff's mental impairments pose only mild and moderate limitations in functioning. Pl.'s Br. 2.

1.    ALJ's Consideration of Plaintiff's Combined Impairments

Plaintiff asserts that the ALJ "erred by failing to assess Plaintiff's impairments in combination, as well as the 'combined effect' of Plaintiff's severe and non-severe impairments in finding that Plaintiff is not disabled." Pl.'s Br. 3. Plaintiff acknowledges that the ALJ properly identified his severe and non-severe impairments but argues that she did not mention his impairments in her discussion following her finding of a lack of a combination of impairments that meets the standard for total disability. *Id.* The Commissioner contends the ALJ "carefully considered these impairments past step two" and the Commissioner outlined the ALJ's discussion of Plaintiff's impairments contained in her decision. Def.'s Br. 6-8. On Reply, Plaintiff argues that the "ALJ's consideration of these impairments for purposes of determining Plaintiff's residual functional capacity is no substitute for consideration at each stage of the process." Pl.'s Reply 2, ECF No. 11.

The regulation related to the consideration of multiple impairments provides that in determining whether an individual's physical or mental impairments "are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility" for benefits, the ALJ "will consider the combined effect of all . . . impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. "If [the

ALJ finds] a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process." *Id.* In *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989), the court held that "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.* at 50.

Here, at Step Two of the sequential evaluation process the ALJ determined Plaintiff had the severe impairments of left foot fractures, aortic aneurysm repair, chronic fifth toe metatarsal dislocation, substance addiction disorder in remission, chronic pain disorder, major depressive disorder, anxiety disorder, and borderline intellectual functioning. Tr. 79. The ALJ also found Plaintiff had non-severe impairments of psoriasis, history of hernia repair, and controlled seizures. Tr. 80. At Step Three the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *Id.* The ALJ then determined Plaintiff had the residual functional capacity ("RFC") for less than the full range of light work. Tr. 82. The ALJ discussed Plaintiff's impairments both singly and in combination throughout her RFC analysis, Tr. 83-90, and concluded as follows:

> In sum, I have considered the entire record including clinical findings, results of diagnostic studies, medical opinions, the claimant's subjective allegations and *combined effect of all of the claimant's impairments* and find that the residual functional capacity set forth above is an accurate reflection of the claimant's residual functional capacity. Specifically, I find that the claimant has severe impairments resulting from his impairments and that those impairments reasonably restrict him to a range of light work as above reduced. *Considering these impairments in combination with his other non-severe impairments*, while being mindful of SSR 85-28, fails to show any other limitations in his ability to perform basic work-related activities.

Tr. 91 (emphasis added). It is evident to the court that the ALJ did, in fact, consider the combined effects of Plaintiff's severe and non-severe impairments and, thus, accepts the truth of the ALJ's assertion. *See Sims v. Colvin,* Civil Action No. 0:14–1663–MGL–PJG, 2015 WL 5525096, at *6 (D.S.C. Sept. 17, 2015) ("[T]he Court is satisfied that, when the ALJ's opinion is read as a whole, it

is clear that he considered the combined effect of Plaintiff's combined impairments. Further, '[the Court's] general practice, which [it] see[s] no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.'" *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).

Furthermore, although Plaintiff argues the ALJ failed to consider his impairments in combination, Plaintiff does not explain how this alleged failure affected the ALJ's ultimate conclusion. As the court concluded in *Wright v. Astrue*, Plaintiff has "done much less than is required." *Wright v. Astrue*, No. CIV.A. 2:10-2449-DCN, 2011 WL 5403104, at *8 (D.S.C. Oct. 18, 2011), *report and recommendation adopted,* No. CIV. 2:10-2449 DCN, 2011 WL 5403070 (D.S.C. Nov. 8, 2011). The *Wright* court noted:

> The plaintiff's objection stops largely at the accusation that the ALJ's consideration is too thin, which, as the plaintiff contends, is the appropriate legal point, considering the applicable standard of review, but fails to take the additional step of suggesting how the outcome could have been different. In other words, there is a failure to demonstrate anything more than the harmlessness of the error.
>
> To restate, the Court believes that the ALJ satisfied his obligation to treat the combined effects of all relevant impairments, in the first instance, and, further, that the plaintiff has not offered any reason to conclude that more would have produced a different result.

*Id.* The undersigned finds the ALJ did not err in her consideration of Plaintiff's combined impairments, and concludes that even if she had, any such error would be harmless in light of Plaintiff's failure to identify any impairment the ALJ did not consider or the impact of a more detailed analysis on the ALJ's decision.

### 2. ALJ's Consideration of the Medical Evidence

Plaintiff argues that the "ALJ did not properly consider all of the medical evidence in making her determination that claimant's mental impairments pose only moderate limitations on understanding, remembering and applying information, concentrating, persisting, and maintaining

pace." Pl.'s Br. 4. The Commissioner argues that "Plaintiff failed to prove that he met all of the criteria of any mental disorder listing." Def.'s Br. 9.

The ALJ applied the special technique to determine whether Plaintiff's mental impairments met the paragraph B criteria for Listings in section 12.00. Using this technique requires that the ALJ first determine if the claimant has a medically determinable mental impairment and then rate the degree of functional limitation resulting from the impairment. 20 C.F.R. § 416.920a(b). Rating the functional limitations uses a five-point scale of none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4). "To satisfy the 'paragraph B' criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." Tr. 80.

a.    Understanding, Remembering, or Applying Information

The ALJ determined that Plaintiff has moderate limitations in understanding, remembering, or applying information. Tr. 80. The ALJ noted:

> The claimant is able to understand and learn terms, instructions and procedures, follow 1 or 2 step oral instructions to carry out tasks and describe work activity to someone else. He is able to ask and answer questions and provide explanations, recognize a mistake and correct it, identify and solve problems. He is able to sequence multi-step activities and use reason and judgment to make work-related decisions. The claimant's primary allegations of limitations are associated with his alleged physical impairments.

*Id.*

Plaintiff argues the ALJ failed to consider the opinion of Dr. Cashton Spivey who "found that Claimant has difficulty understanding complex instructions and performing complex tasks in the workplace (Exhibit 1F)." Pl.'s Br. 4. However, the ALJ thoroughly discussed Dr. Spivey's June 2013 opinion including his opinion that Plaintiff would display difficulty understanding complex

instructions and performing complex tasks in a workplace. Tr. 84. Based on the medical evidence of record, including Dr. Spivey's opinion, the ALJ found that "the claimant is able to attend to and perform simple unskilled work for reasonable periods of time without special supervision." Tr. 89.

Accordingly, the court finds no error.

b.     Concentration, Persistence, and Pace

The ALJ determined Plaintiff has moderate limitations with regard to concentrating, persisting, or maintaining pace. Tr. 81. The ALJ cited to Plaintiff's hearing testimony regarding his activities and capabilities and noted that she took into consideration Plaintiff's mental impairments on his concentration, persistence, and pace. *Id.*

Plaintiff contends the ALJ failed to consider the statement of Dr. Timothy Laskis that he "has difficulties in maintaining concentration, persistence and pace (Exhibit 10F)." Pl.'s Br. 4. Plaintiff also asserts his "difficulties with concentration are also evidenced by Dr. Conigliaro Jones' physical assessment at which Claimant had trouble keeping focused on the questions asked to him (Exhibit 6F)." *Id.* Plaintiff contends that the "ALJ's failure to discuss this evidence demonstrates that she failed to consider them in making her determination that Plaintiff suffers only moderate limitations." *Id.*

The ALJ discussed the October 2014 consultative physical examination conducted by Dr. Jones. Tr. 85. The ALJ noted Dr. Jones's finding that on exam Plaintiff "was alert, oriented, thought content was adequate, but he had extreme flight of ideas and difficulty keeping focused on the questions that were proposed to him." *Id.* The ALJ noted that "Dr. Jones diagnosed history of alcoholism in recovery, possible malingering and borderline literacy (Exhibit 6F)." *Id.* The ALJ also noted that she considered the reports of the State agency medical consultants and gave great weight to the "assessments of DDS psychological consultant Dr. Laskis, wherein he indicated the claimant

was able to do simple unskilled work, as this opinion was generally consistent with the overall evidence of record (Exhibit 10F). Partial weight is given the assessed limitations in Exhibit 9F, wherein he assessed mild social and moderate concentration, persistence and pace limitations, which were consistent with the evidence." Tr. 90.

On December 18, 2014, Dr. Laskis completed a Psychiatric Review Technique in which he indicated Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. Tr. 518 (Ex. 9F). Dr. Laskis concluded: "Considering all information in the file there is nothing to indicate [claimant] would be precluded from performing simple, unskilled work." Tr. 520. On the same date, Dr. Laskis completed a Mental Residual Functional Capacity Assessment in which he indicated Plaintiff was "Moderately Limited" in the ability to understand and remember detailed instructions and in the ability to carry out detailed instructions. Tr 522. In all other areas Dr. Laskis noted that Plaintiff was "Not Significantly Limited." Tr. 522-23. Dr. Laskis concluded that Plaintiff "should be able to attend to and perform simple unskilled work for reasonable periods of time without special supervision. He can attend work regularly, make work-related decisions, protect himself form work-related safety hazards and travel to and from work independently. He can accept supervision and interact appropriately with co-workers and the general public." Tr. 524.

Once again, it is clear that the ALJ considered the medical evidence provided by both Dr. Jones and Dr. Laskis. The court finds no error.

c.      Intellectual Functioning

Citing to Dr. Spivey's findings, Plaintiff contends that the results of his intellectual testing supports he has marked limitations. Pl.'s Br. 4. Plaintiff asserts that "[b]y failing to properly consider this evidence, the ALJ erred." *Id.* at 5.

Dr. Spivey completed a Psychological Evaluation of Plaintiff on June 6, 2013 and administered the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV) and the Wide Range Achievement Test – Revision 4 (WRAT-4). Tr. 279. Based on the results of these tests, Dr. Spivey concluded that Plaintiff "appears to be an individual of mentally retarded general intelligence with academic achievement deficits." Tr. 282.

As indicated above, the ALJ considered Dr. Spivey's evaluation and noted Plaintiff's test scores that "plac[ed] him in the mentally retarded range of intellectual functioning." Tr. 84. The ALJ noted that Plaintiff "appeared to function below what was expected" academically. *Id.* After discussing the other medical evidence of record, Tr. 85-89, the ALJ again referenced Dr. Spivey's evaluation of Plaintiff's intelligence range in his discussion of Plaintiff's mental impairments, Tr. 89. The court finds no error in the ALJ's consideration of Dr. Spivey's assessment.

### d.      Managing Finances and Interacting with Others

Plaintiff again argues that in finding "Plaintiff suffers only 'mild limitations' as his impairments relate to interacting with others . . . the ALJ did not give proper weight to the findings of Dr. Cashton Spivey that Claimant is incapable of managing funds and that Claimant has difficulty relating to others." Pl.'s Br. 5.

In rating Plaintiff's mental functionality at Step Three, the ALJ determined that Plaintiff has mild limitations in interacting with others noting that the "evidence does not show significant problems getting along with family members, friends, neighbors and others. He is able to relate to and work with supervisors, co-workers and the public." Tr. 80. The ALJ also found that in the area of "adapting or managing oneself, the claimant has experienced moderate limitations. The evidence does not indicate any signs of significant deterioration or decompensation in his mental status." Tr. 81.

In her discussion of the medical evidence the ALJ noted Dr. Spivey's finding that Plaintiff "was incapable of managing funds independently and accurately." Tr. 84. The ALJ also noted that "Dr. Spivey stated the claimant might have difficulty relating well to others in a workplace due to significant dysphoria (Exhibit 1F)." *Id.* The ALJ also cited to Dr. Kruse's November 2014 evaluation wherein she "stated the claimant was able to communicate effectively, was interpersonally relatable and aware of social cues. He was competent to manage his own appointments and schedule and was cognitively able to manage funds appropriately." Tr. 85.

The court notes that Dr. Spivey's evaluation was performed before Plaintiff stopped drinking alcohol; Dr. Kruse's examination was performed after Plaintiff achieved sobriety.

After discussing the medical evidence, the ALJ described Plaintiff's daily activities and noted that his "described daily activities are indicative of a fairly active and varied lifestyle and are not representative of a significant restriction of activities, constriction of interests, or impaired social functioning." Tr. 89. The ALJ concluded:

> While the evidence of record substantiates some restrictions on the claimant's ability to engage in work-related activities, the evidence as a whole does not substantiate that total ability is so markedly limited as to prevent the performance of all work.

Tr. 90. The ALJ noted that "[n]one of the claimant's treating or examining physicians have offered any opinion regarding disability. No physician assessed any restrictions or limitations." *Id.*

The court finds the ALJ properly considered the evidence and substantial evidence supports her findings. The court notes that Plaintiff may be under the impression that the ALJ erred because she did not discuss the medical evidence she cited at Step Three and instead discussed it elsewhere in her opinion. However, a cursory explanation at Step Three is satisfactory as long as the ALJ considered the records cited by the Plaintiff at other points in her decision. *Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011). "Reading the ALJ's decision as a whole, substantial evidence

supports the finding at step three of the sequential evaluation process as the ALJ's analysis at subsequent steps of the evaluation are inconsistent with meeting Listing [12.00]." *Id.* (citing *Fischer–Ross v. Barnhart,* 431 F.3d 729, 733–34 (10th Cir. 2005) (rejecting per se rule that failure to provide sufficient explanation at step three requires remand and holding that ALJ's finding at other steps of sequential evaluation may provide basis for upholding step three finding)). "Where the ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion in his Step 3 analysis." *Kiernan v. Astrue*, No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013).

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig,* 76 F.3d at 589; *see also* 42 U.S.C. § 405(g). Therefore, it is hereby ORDERED that the Commissioner's decision be affirmed.

        IT IS SO ORDERED.

August 6, 2019                                        Kaymani D. West
Florence, South Carolina                    United States Magistrate Judge